UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MCF AF, LLC, AND MCS CAPTIAL, LLC                                          PLAINTIFFS

V.                                                      CIVIL ACTION NO. 3:16-CV-722-DPJ-FKB

EDUARDO A. FLECHAS, FLECHAS & ASSCOIATES, P.A.,
AND THE FLECHAS LAW FIRM, PLLC                                             DEFENDANTS

ORDER

Defendant Eduardo Flechas asks the Court to dismiss this contempt action against him, arguing that it is impossible for him to pay back the almost $400,000 he spent in violation of an Asset Freeze Order. Having considered Flechas's testimony at the hearing, his account records, and the parties' briefing, the Court disagrees—the contempt order will remain in place.

I.      Factual Background

On October 19, 2015, Eduardo Flechas agreed to be held in contempt and promised to pay back approximately $400,000, which he spent in violation of the Court's Asset Freeze Order. Order [1-1] at 2. If he failed to purge the contempt within thirty (30) days, Flechas agreed to submit himself to incarceration. *Id.* at 3.

In the beginning, Flechas made payments toward the contempt judgment, and the Court granted his repeated requests to postpone incarceration. Between October 20, 2015, and January 6, 2016, Flechas paid $64,391.48 into the Court's registry.[1] But then Flechas's payments stalled, and the Court declined to further delay the inevitable. Beginning July 22, 2016, the Court

---

[1] *See* 3:13-CV-621-DPJ-FKB Oct. 20, 2015 ($10,391.48); Nov. 18, 2015 ($10,000); Dec. 16, 2015 ($25,000); Jan. 6, 2016 ($19,000).

ordered Flechas to submit himself to intermittent incarceration every other weekend at the Madison County Detention Center.

Since incarceration commenced, Flechas has made one $5,000 payment into the Court's registry.[2] And on March 16, 2017, the Court credited Flechas's contempt obligation in the amount of $35,842.29, for funds which he had paid into the bankruptcy estate. Order [27]. To date, Flechas has received contempt credit for just over $105,000.

In his initial motion, Flechas represented that he had reached settlement agreements with all plaintiffs in the underlying lawsuit and argued that dismissal of the severed contempt action would allow the action to be "fully and finally concluded." Def.'s Mot. [30] at 2. He asked the Court to dismiss the severed contempt action, vacate its Order of Confinement, and return his passport. *Id.*

MCS responded in opposition, arguing that (1) the confinement was producing the desired effect (repayment), (2) Flechas has yet to fully purge his contempt, and (3) Flechas, a licensed attorney and experienced businessman, agreed to an even more stringent confinement than the Court ordered. Pl.'s Resp. [31] at 1. In reply, Flechas changed course, saying he does not have the ability or funds required to purge himself of contempt, so compliance is "impossible." Def.'s Reply [32] at 2.[3] This representation prompted the Court to order Flechas

---

[2] Flechas made this payment on August 12, 2016, bringing the total paid into the registry to $69,391.48.

[3] In his reply, Flechas argued that it was "not equitable to continue to mandate that [he] remit the remaining sum in question or otherwise face incarceration and home detention." Def.'s Reply [32] at 2–3. At the hearing, Flechas clarified that he is seeking relief only from the incarceration and home confinement and understands that he would still be liable for the $290,000. Tr. [44] at 9–10.

to submit updated financial records and to set the matter for a hearing. The parties filed supplemental briefing following the August 16, 2017 hearing, and the Court is prepared to rule.

II.     Standard

Courts have "the inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Here, Flechas agreed to be held in civil contempt for violating the Court's Asset Freeze Order. He promised to repay the money he spent and submit himself to incarceration "until such time as the contempt is fully purged." Order [1-1] at 4. This arrangement presents the classic case of the contemnor carrying the keys to his own prison. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 331 (1947).

But Flechas now asserts that compliance is "impossible." Def.'s Reply [32] at 2. In a civil-contempt proceeding, a defendant may assert an inability to comply, and where compliance is impossible, the Court may opt not to proceed with the civil contempt action. *United States v. Rylander*, 460 U.S. 752, 757 (1983). "It is settled, however, that in raising this defense, the defendant has a burden of production." *Id.*

III.    Analysis

    A.     Financial Ability

        1.     Testimony

To substantiate his claim that he is financially unable to repay the money, Flechas testified at the motion hearing that he has tried to "economize" by moving to a less expensive home, selling jewelry, transferring his children to a different private school, cancelling his health insurance, wearing machine-washable (versus dry-clean-only) clothing, limiting lunches out, and

keeping a vehicle with over 200,000 miles (versus replacing it). Tr. [44] at 3–5. He said he has undergone "a lifestyle change" and believes he has not spent money "foolishly." *Id.* at 9.

MCS challenged this assessment. It pointed out that Flechas had chosen to rent a four-bedroom, 2800-square-foot home in Northeast Jackson for $2,300 per month, while less-expensive homes in the area, or in nearby Madison or Rankin County, were available. *Id.* at 11–12. MCS also explored the cost of private school for Flechas's three children, which Flechas estimated at $800 per month. *Id.* at 13. MCS suggested that public school in either Madison or Rankin County would have been another cost-saving alternative, but Flechas said he was not interested in sending his children to public school. *Id.* at 14–15.

Of course, Flechas can decide where to live and where to send his children to school. But he is before the Court now claiming that it is impossible to make any payments toward the contempt judgment. That's a stretch. He has made adjustments to his lifestyle, but there is arguably still room to decrease his expenses even further. Also, many of the cost-saving changes were just recently implemented, so only time will tell whether these adjustments free up additional monies to be paid toward the contempt judgment. It makes sense to let the measures he has employed in an effort to save money play out; perhaps Flechas will be in a position to pay toward the judgment.

2. Financial Records

Similarly, Flechas's financial records from February 14 to August 14, 2017, are peppered with discretionary expenses, beyond basic living expenses such as housing, groceries, and utilities. Fin. R. [38] (Sealed). For example, Flechas repeatedly spent in excess of $75 at multiple clothing stores (Journeys KIDZ $117; Old Navy $113; Banana Republic $89; J. Crew $85, $86; Belk $83). At other times, he spent over $200 in a single transaction at various retail

4

locations (Best Buy $282; J. Crew $208, $225; Gap $214; Wal-Mart $210, $220; Home Depot $287; Amazon $365). He spent over $600 at hair salons and a beauty-supply store (WaveLengths $243, Lacru $77, Sephora $327). Adding up these examples, Flechas spent over $3,000 on discretionary purchases in a six-month period.[4]

In addition, Flechas made large recurring payments totaling almost $5,000 to credit card companies, suggesting that additional purchases are being made that are not reflected in the bank account records (Target Card $184, $183, $169, $179, $174, $176; First Premier Card $100, $200, $188, $364, $400, $400, $490; Credit One Bank $100, $113, $100, $400; Discover Card $300, $200, $250, $200, $131). Combined with the expenses mentioned above, Flechas spent over $8,000 in six months. While some of that is surely attributable to legitimate needs, Flechas has not made a single payment toward the contempt judgment since August 2016.[5]

Flechas's testimony and his financial records signal that he is willing to make some changes to cut his expenses, but he is willing to go only so far. In essence, it appears that Flechas would prefer to submit himself to intermittent incarceration than make spending decisions that allow him to pay his debt. These are choices that Flechas is free to make, but these choices do no support a finding that he is *incapable* of continuing to pay towards his contempt judgment. And it bears repeating that Flechas agreed to submit to 24/7 incarceration—the Court's order of intermittent incarceration is substantially less onerous. Flechas has not shown that compliance is impossible; his motion to dismiss is denied at this time.

---

[4] This list is not exhaustive. The records also contain numerous purchases below $75 to retailers such as Target, Hobby Lobby, Academy Sports, Gander Mountain, Barnes and Noble, and Turkoyz, which are not included in this calculation.

[5] Flechas did receive "contempt credit" for monies paid into the bankruptcy estate in March 2017. But nine months have now passed, and he has not made any progress in paying down the judgment.

B.   EF Properties, LLC

During the hearing, Flechas testified under oath that he had disclosed all of his assets to the Court and essentially owned nothing. Tr. [44] at 41–43.

> Q.   (By the Court) All right. Do you have—and I'm going to be as broad as humanly possible—
>
> A.   (Flechas) Yes, sir.
>
> Q.   —any other asset, you know, account by any name, you know whether it's a 401(k), whether it's, you know, whatever that either you, your wife or any of these entities that you've set up would have an interest in?
>
> A.   No, sir. I can tell you rather reservedly that if I had the $290,000 to pay the court, I would not be sitting right here today with the contempt. I would have paid it a long time ago. There's no funds but for what the court in that accounting has been given.
>
> Q.   Is there—and I understand the situation with your home, but—I understand you have your vehicles. But is there any other personal property, any land, any—any other type of this property that you own?
>
> A.   I've got nothing, Your Honor.
>
> . . . .
>
> Q.   Are there any other kind of investments?
>
> A.   No investments. I had a 401(k), but I liquidated that two years ago or better. It was a small amount in a 401(k). But I have no 401(k), no retirement.
>
> Q.   When I say investment, it could be something other than a 401(k). You could have an investment in a copper mine or—
>
> A.   None. None, your Honor.
>
> . . . .
>
> Q.   And just so we're not mincing words, you understand that if something does turn up during the course of bankruptcy or some other proceeding, I'm going to be the first one to turn this over to the U.S. Attorney's Office.

> A. Sure. Sure. I have tried to be very forthright with the bankruptcy court. I mean, if the court would like to inquire with them, they certainly can. But I've tried to be very up front with them and have been up front with them.

*Id.* at 41–43.

The Court then heard testimony from Stephen Smith, the Chapter 7 Bankruptcy Trustee. Smith said that he had uncovered EF Properties, LLC, which owned a sand and gravel pit in Copiah County valued at $400,000. *Id.* at 56–57. According to records filed with the Secretary of State, Eduardo A. Flechas is listed as the member, manager, and registered agent of EF Properties, LLC. *Id.* at 59; *see also* Trustee Ex. 1 [36]. Smith testified that he met with the prior owners of the property, the Langs, who explained that they transferred the property to Flechas and EF Properties. Tr. [44] at 64. Smith also explained that a lawsuit was currently pending before Judge Bramlette involving the Langs, Flechas, and the gravel pit. *Id.* at 66–67; *see Beasley v. Lang, et al.*, 5:16-CV-82-DCB-MTP.

Given Smith's statements, the Court instructed Flechas to file a supplemental response. In it, Flechas denied any real ownership interest in the property. Aff. [49] (Sealed). He said the property was used as collateral for the Langs' legal debts to him. Aff. [49].

None of this is very clear to the undersigned. Flechas's affidavit actually raises more questions, and the attorney for the bankruptcy trustee takes the position that "Flechas [sic] ownership in E.F. Properties is property of the bankruptcy estate." D. Henderson Email [49-4]. But given the known facts, it is hard to understand why Flechas would not disclose EF Properties, LLC, when the Court asked him in terms "as broad as humanly possible" whether he had any other "interest" in any other assets. Tr. [44] at 41. At the moment, it does not appear that any party has asked this Court to determine whether Flechas owns the property, and there

7

are two other courts looking into that and other issues. Regardless, Flechas's testimony further damages his credibility as it relates to his ability to comply with the agreed contempt order.

        C.        Contempt Credit

The Court also notes that MCS, in its post-hearing response, urges the Court not to give Flechas "contempt credit" for pre-petition funds paid into the bankruptcy court. Pl.'s Resp. [40] at 7. Presumably, MCS is referring to the $35,842.29 credit Flechas received on March 16, 2017. Order [27]. This credit was applied pursuant to a joint motion by Flechas and the Trustee [25]. Only MCS responded, consenting to the motion [26]. Likewise, $59,000 was released to the Trustee for the benefit of the bankruptcy estate on September 26, 2016, consistent with an *unopposed* motion by the Trustee. Order [16].

While MCS may have a valid argument, there is not a pending motion before the Court seeking "contempt credit." Should such a motion be filed in the future, MCS is free to oppose it.

IV.        Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changed the result. For the reasons given, Eduardo Flechas's motion to dismiss the contempt action [30] is denied. The Order of Intermittent Incarceration remains in effect.

This case cannot remain open forever, but on this record, the time to close it has not arrived. Flechas is directed to submit updated financial records on March 1, 2018, for *in camera* review. The Court will reassess at that time.

**SO ORDERED AND ADJUDGED** this the 27th day of November, 2017.

                                        s/ *Daniel P. Jordan III*
                                        CHIEF UNITED STATES DISTRICT JUDGE